IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA<br>Plaintiff<br><br>v.<br><br>JEFF FONT-RUIZ<br>Defendant | CRIMINAL 06-0178CCC |

## ORDER

Pending before the Court is defendant Jeff Font Ruiz's Rule 29(a) Motion for Judgment of Acquittal on Count 4 of the indictment, presented in open court after the close of all of the evidence.[1]  Count 4 charges a violation of 18 U.S.C.§666(a)(1)(B) and §2.

This statute provides, in pertinent part:

(a) Whoever, if the circumstance described in subsection (b) of this section exists –

   (1) being an agent or an organization, or of a State, local, or Indian tribal government, or any agency thereof –

   . . . .

   (B) corruptly solicits or demands for the benefit of any person, or accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business transaction or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more;

shall commit an offense against the United States.

Count 4 of the indictment charged the following:

Theft Concerning Program Receiving Federal Funds
18 USC §666(a)(1)(B) and 2

   1. Paragraphs one (1) and three (3) of Count Two of this Indictment are realleged and incorporated herein by reference as if fully set forth herein.

---

[1] Defendant Font's Rule 29(a) motion on Count 2 of the indictment was denied in open court.

CRIMINAL 06-0178CCC			2

2.  From in or about November 2003, through in or about February 2005, in the City of Can Juan, in the District of Puerto Rico and elsewhere, and within the jurisdiction of this Court, the defendants Livea Alicea Rios, [1]LIVEA ALICEA RIOS, [2] JEFF FONT RUIZ, **aiding and abetting each other, did knowingly and corruptly solicit, demand, accept and agree to accept something of value from Section 8 Program applicants on behalf of defendant, Livia Alicea Ríos,** an agent of the Department of Housing and Community Development for the Municipality of San Juan and organization or agency which received benefits in excess of $10,000.00 under a Federal program involving a grant, or other form of Federal assistance, in each successive one year period beginning in 2003 through 2005, intending to be influenced and rewarded in connection with a business transaction or series of transactions of the Department of Housing and Community Development for the Municipality of San Juan, involving something of value of $5,000.00 or more.

In violation of Title 18 United States Code, Section 666(a)(1)(B) and 2.

(Our emphasis.)

The government did not present any trial evidence in support of the allegation contained in Count 4 that Alicea Ríos and Font Ruiz "aiding and abetting each other, did knowingly and corruptly solicit, demand, accept and agree to accept something of value from Section 8 Program applicants on behalf of defendant, Livia Alicea Rios, an agent of the Department of Housing and Community Development for the Municipality of San Juan." Rather, its has focused exclusively on establishing that Livia Alicea, being an agent in charge of the Section 8 subsidized housing program of the Municipality of San Juan, an agency that received federal assistance in any one year period in excess of $10,000,00 corruptly accepted or agreed to accept from Font, a Section 8 landlord, things of value, such as rental benefits in relation to her lease on two Font properties, intending to be influenced or rewarded in connection with a series of transactions of the Section 8 program.  The transactions alluded to consisted in the preferential processing of Section 8 vouchers for several prospective Font tenants that ultimately resulted in their acceptance into the program and rental payments to Font in excess of $500.00 monthly per tenant, thereby involving something of value of $5,000.00 or more.

The question confronted by the Court is whether the evidence submitted in support

CRIMINAL 06-0178CCC                              3

of Count 4 of the indictment as well as the Court's instructions to the jury on such count would constitute a constructive amendment of the indictment. Defendant Font did not object to the government's evidence on its uncharged theory that aiding and abetting each other, Alicea received benefits from him in exchange of manipulating the Section 8 waiting list to favor his clients.  The key government witness, Livia Alicea, testified extensively on how Font allowed her to be delinquent in her rental payments to him and in her compliance with lease requirements in exchange for her advancing his prospective Section 8 tenants on the waiting list, thereby dramatically shortening their waiting period that could ordinarily have lasted for several years.

Although defense counsel did not raise a constructive amendment claim in those very terms, he did raise that his client was charged in Count 4 with aiding and abetting Alicea in corruptly soliciting and accepting things of value from Section 8 applicants, while the evidence referred to other uncharged criminal conduct.  The two-hats theory, although argued in a totally confusing and inartful manner, means that Font, as an accomplice or "aider and abettor," could not have "corruptly solicited or demanded or accepted or agreed to accept benefits," from Section 8 applicants, as charged in Count 4 of the indictment, and, at the same time, be the "any person," as landlord, from whom defendant Livia Alicea, director of the Section 8 Program of the Housing Department, "accepted anything of value," i.e., rental and other benefits, which is the government's uncharged theory supported by the evidence.

It is settled law that a constructive amendment occurs when "the terms of the indictment are in effect altered by the presentation of evidence and jury instructions that so modify essential elements of the offense that there is a substantial likelihood that the defendant may [be] convicted of an offense other than that charged in the indictment." U.S. v. Delano 55 F.3d. 720, 729 (2nd Cir. 1993); U.S. v. Mueffelman, 470 F.3d. 33, 38 (1st Cir. 2006).  To determine whether a constructive amendment has occurred, the court must

CRIMINAL 06-0178CCC                                  4

examine whether the terms of the indictment were "altered either literal or in effect by either the prosecutor or the court after the Grand Jury has last passed upon them." U.S. v. Bucci, 525 F.3d. 116, 131 (1st Cir. 2008), quoting U.S. v. Fisher, 3 F.3d. 456, 462 (1st Cir. 1963). In U.S. v. Kelly, 722 F.2d 873 (1st Cir 1983), our Circuit cites the cases that acknowledge that under the Fifth Amendment a defendant may be tried only on the indictment of a Grand Jury and no other, and that the Sixth Amendment requires that a defendant be informed of the nature and cause of the accusation.

      The risk and perils of a constructive amendment were recognized by the Supreme Court as early as 1887 in Ex Parte Bain, 121 U.S. 1, 7 S.Ct. 781, on which the Court relied in the landmark case of U.S. v. Stirone, 80 S.Ct. 270, 361 U.S. 212 (1960). Bain was overruled on other grounds in U.S. v. Cotton, 122 S.Ct. 1781 (2002). The Court stated that the departure from the jurisdiction analysis did not affect the jurisdiction of the trial court to determine the case presented by the indictment. Although the Court had "departed from the Bain view that indictment defects are "jurisdictional," it did not retreat from the settle proposition of law decided in Bain that 'an indictment may not be amended except by resubmission to the Grand Jury, unless the change is merely a matter of form." Cotton, supra, at 631. In Stirone, the constructive amendment was introduced by government evidence of an effect on interstate commerce not only in sand brought into Pennsylvania from other states, but also by interference with steel shipments from the steel plant in Pennsylvania into Michigan and Kentucky. The amendment occurred by way of the trial judge's charge to the jury that Stirone's guilt on the interstate commerce aspect could be rested on either a finding that (1) sand had been shipped to Pennsylvania from another state or (2) on interference with future shipments of steel fro Pennsylvania to other states. The court found that it was error to submit the future steel shipments question to the jury and that this could not "be dismissed as merely an insignificant variance between allegation and proof." Id., at 215. The Court observed:

CRIMINAL 06-0178CCC                              5

> "If it lies within the province of a court to change the charging part of an indictment to suit its own notions of what it ought to have been, or what the grand jury would probably have made it if their attention had been called to suggested changes, the great importance which the common law attaches to an indictment by a grand jury, as a prerequisite to a prisoner's trial for a crime, and without which the constitution says, 'no person shall be held to answer,' may be frittered away until its value is almost destroyed."

Id., at 216, quoting U.S. v. Bain, 121 U.S. 1, 10 (1887).

Whatever evidence was presented to the Grand Jury in support of Count 4, the fact remains that the only specific factual allegation in said count, in addition to the general averments that track the statutory language is that which imputes to both defendants Alicea and Font with "aiding and abetting each other to knowingly and corruptly solicit, demand, accept and agree to accept something of value from Section 8 Program applicants on behalf of defendant, Livia Alicea Ríos." Were the court to charge the jury on this count following the government's uncharged theory of the case based on its trial evidence, not on the grand jury's charging language, it would be, in effect, altering the literal terms of the indictment. This would be in clear contravention of the Stirone admonishing that the constitutional rights of citizens protected by the Fifth and Sixth Amendments are not to be placed "at the mercy or control of the court or prosecuting attorney." 361 U.S. 212, 217. Additionally, if the Court tailors instructions on Count 4 and abandons the language of the indictment to suit the evidence on the uncharged theory, there is no guarantee that the jury will not be confused nor is there a way of knowing, should they convict, on which theory of the case they based their decision.

This problem, unfortunately, has been created by the careless drafting of Count 4. The Court notes that although this same phrase was included in the Count 2 conspiracy count against Font, that count contains detailed allegations that mirror exactly the trial evidence in support thereof. Thus, the phrase of the indictment that defendants "knowingly and corruptly solicited, demanded, accepted and agreed to accept something of value from

CRIMINAL 06-0178CCC                                6

Section 8 Program applicants" is, at best, a mere variance, without prejudicial effect on defendant, who was given notice of the specific, detailed allegations of Count 2 regarding the nature and objective of the conspiracy, the manner in which it unfolded and the overt acts attributed to each defendant. The evidence has not constructively amended Count 2 nor will jury instructions to be given on such count. .

For the reasons stated, defendant Font's Rule 29(a) motion on Count 4 is GRANTED and such count is DISMISSED.

SO ORDERED.

At San Juan, Puerto Rico, on November 12, 2008.

                                                S/CARMEN CONSUELO CEREZO
                                                United States District Judge