IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA<br>Plaintiff<br>vs<br>1) LIVEA ALICEA-RIOS<br>(Counts 1 through 5)<br>**2) JEFF FONT-RUIZ**<br>(Counts 2 and 4)<br>3) SHEMIKA ORTIZ-AQUINO<br>(Counts 1 and 3)<br>Defendants | CRIMINAL 06-0178CCC |

# O R D E R

Defendant Jeff Font-Ruiz (Font) was found guilty after a jury trial on Count Two of the Indictment filed on June 1, 2006, which charged him and others with conspiring to violate 18 U.S.C. §666(a)(1)(B). Before the Court now are the Amended Objections to Pre-Sentence Report filed by defendant Font on April 14, 2009 (docket entry 236), the United States' Sentencing Memorandum and Response to Defendant's Objections to PSR (docket entry 246) filed on May 20, 2009 (docket entry 246), and defendant's Reply to the United States' Response filed on May 21, 2009 (docket entry 248).

Defendant objects to two upward adjustments applied to him under U.S.S.G. §2C1.1 and §2B1.1(b)(1)(C), and seeks a downward adjustment under U.S.S.G. §2X1.1. According to defendant, the two-level adjustment under §2C1.1(b)(1) for the offense having involved more than one bribe is inapplicable for he claims that the bribe, which he describes as co-defendant Livea Alicea's act of staying at one of his apartments while being late on rent payments, was a "continuous event." Objections, at p. 16. Defendant also claims that the four-level adjustment under U.S.S.G. §2B1.1(b)(1)(C) for the offense having involved the amount of $13,200.00 is equally unwarranted since allegedly it was never established at trial that he received a benefit as a result of the illegal conduct. Finally, defendant avers that as

CRIMINAL 06-0178CCC                                    2

he was only convicted of a conspiracy but not for the substantive offense, and the conspirators allegedly did not complete all acts necessary to successfully commit the underlying offense, then a three-level reduction is merited under U.S.S.G. §2X1.1(b)(2).

In its response to the Objections (docket entry 246), the United States defends the application of the two upward adjustments under U.S.S.G. §2C1.1 and §2B1.1(b)(1)(c), while it utterly fails to address defendant's request for a downward adjustment under U.S.S.G. §2X1.1(b)(2). In addition, the government seeks that an additional two-level upward adjustment be applied to defendant under U.S.S.G. §3C1.1 for obstruction of justice, based on what it categorizes as his perjured testimony at trial. In his reply, defendant objects to the application of the obstruction of justice adjustment requested by the government, again based on an alleged lack of evidence to support it.

Before ruling on the objections, we address a recurring argument in defendant's filings. Defendant states, and correctly we may add, that it is the government's burden to prove the facts central to the applicability of any upward enhancement under the Guidelines. See United States v. Woodward, 277 F.3d 87, 91 (1st Cir. 2002). Defendant repeatedly avers that the government has failed to provide the specific evidence and present the witnesses that would support the application of the upward enhancements. Defendant seems to forget, however, that a ten-day jury trial where nine witnesses were presented by the government was held in this case, and that the presentation of evidence at the sentencing hearing is not the exclusive means by which the government may meet its burden of proving facts in support of upward adjustments. Instead, the Court may make findings based on the evidence presented in the guilt phase of the trial, without their being a need to introduce additional exhibits or testimony at sentencing. United States v. Fetlow, 21 F.3d 243, 250 (8th Cir. 1994). It is readily apparent from the government's response to the objections that it is precisely on the evidence presented at trial that it is relying to support the claimed Guideline adjustments.

CRIMINAL 06-0178CCC                              3

At the outset, we note that the parties are in agreement that the Guideline applicable to the offense of conviction is §2X1.1, which requires the Court to determine the base offense level using the base offense level from the Guideline for the substantive offense plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty.  Thus, any specific offense characteristics from the guideline for the substantive offense which are based on events that were specifically intended or that actually occurred may be applied.  See Application Note 2 to U.S.S.G. §2X1.1.  With these tenets in mind, we now address the applicability of the adjustments at issue here.

- More than one bribe

While defendant avers that there was no more than one bribe, and that the payment made to co-defendant Livea Alicea-Ríos (Alicea) was a continuous event, the evidence presented at trial belies this.  Alicea testified at length how she contacted Font on October 28, 2003 when she had a personal problem that required her to move immediately and he offered her one of his rental housing units to live in and provided the employees and trucks to do the moving.  Contrary to the practice of his business, Font did not require her to pay a security deposit or advance payment.  Soon thereafter, Alicea began to fall in arrears on her rental payments for periods of up to three (3) months and Font neither demanded payment nor served her with eviction notices.  Then, on November 2004, Font offered her to move to what she described as a better property.  Once again, he did not charge her for the moving expenses nor required a deposit from her as was customary.  While this special treatment was going on, Font referred to Alicea potential tenants so that she could help them obtain on a fast-track basis the §8 vouchers that would allow them to pay for the rental of his housing units.  Alicea testified that she helped Font with potential tenants on at least ten instances.  Font did not demand from Alicea the payment of her rent in arrears until May 19,

CRIMINAL 06-0178CCC					4

2005, one month after she had left her position as division manager of the §8 program of the Municipality of San Juan.

Clearly, the preponderance of the evidence presented at trial shows that Alicea was bribed by Font through the treatment she received as his "privileged" tenant in exchange for her actions in expeditiously issuing §8 vouchers to other potential Font tenants that eventually would use them to occupy his rental units.  These bribes, which certainly were more than one, took different forms, among them:  providing her two housing units in which to live, the assumption of all her moving expenses on two occasions, not requiring security deposits in either property and, finally, allowing her to fall in arrears for several months on her rental payments without any consequences.  Thus, as the conspiracy for which defendant Font was convicted involved more than one bribe or extortion, the two-level upward adjustment under U.S.S.G. §2C1.1(b)(1) was correctly applied.  Defendant's objection to the contrary is OVERRULED.

- Amount involved in the offense

Defendant was applied a four-level upward adjustment in the Pre-Sentence Report pursuant to U.S.S.G. §§2C1.1(b)(2) and 2B1.1(b)(1)(C) for the offense having involved the amount of $13,200.00.  Defendant claims that no adjustment should be applied because the government failed to show that he actually benefitted from the offense as he would have rented his apartments anyway in the absence of the illegal conduct, and the value of the bribes to co-defendant Alicea did not exceed $5,000.00, which is the threshold amount required for any adjustment to be applied under said section.  The government alleges, however, that the adjustment was proper as the value of the bribes paid to Alicea exceeded $10,000.00, yet it fails to provide a breakdown of how they added to that total amount.

U.S.S.G. §2C1.1(b)(2) requires that an upward adjustment be made under §2B1.1 "[i]f the value of the payment, the benefit received or to be received in return for the payment,

CRIMINAL 06-0178CCC                                  5

the value of anything obtained or to be obtained by a public official or others acting with a public official, or the loss to the government from the offense, whichever is greatest, exceeded $5,000." Only the first two alternatives are relevant here, so we consider them separately.

As to the "value of the payment," we focus our inquiry on the amount of the bribes paid by Font to Alicea. As stated before, these consisted of Font having provided Alicea with two housing units in which to live, Font's taking care of all her moving expenses on the two occasions that she moved to those properties, not requiring her to pay security deposits in either property, and permitting her to fall in arrears for months at a time on her rental payments without requiring her to pay late charges or any other adverse consequences.

Alicea testified that she first received a demand by Font for payment of the rent owed by her just one month after she left her position at the San Juan's §8 program. That demand, a statement of account dated May 19, 2005 which was admitted as Exhibit 3 at trial, shows that at the time she owed him $2,850.60. From that statement, and based also on the testimony of Font's employee in charge of the billing for his rental units, Gloribee Galarza-González, it can be determined that the monthly rental payment for the first property occupied by Alicea was $500.00 and the monthly rental payment for the second property to which she moved in late 2004 was $817.00. Upon considering that Galarza-González also testified that for neither housing unit was Alicea required to post the security deposit customarily required from all tenants which was equivalent to the rent for one month, a fact which Alicea confirmed, it can be concluded that this benefit amounted then to $1317.00. The remaining benefits received by Alicea are harder to quantify, however. There is absolutely no evidence on record as to what was the cost of the two moves paid by Font. As to the charges for late payments from which Alicea was also exempted, while Galarza-González testified that for a private tenant the late-payment charge fee was $50.00 per month, it is hard to determine the exact number of months for which said charge would have

CRIMINAL 06-0178CCC                                         6

accrued. González-Galarza declared that she fell in arrears for 5 to 6 months, a number which more or less coincides with the amount due billed in the statement of account which, by the way, does not itemize any amounts due for the late-payment charges. Alicea in her testimony never provided an exact number either. Conservatively, and based on González-Galarza's testimony that Alicea fell behind her rental payment on at least five occasions, said late-payment charge which she was never required to pay would have amounted to $250.00. Hence, based on the evidence presented at trial, the value of the payments received by Alicea from Font amounted to $4,417.60, not enough to warrant an upward adjustment under U.S.S.G. §2C1.1(b)(2).

      Our inquiry does not end here, however, as we must also consider, for purposes of §2C1.1(b)(2), "the benefit received or to be received in return for the payment." In this regard, defendant avers that as he would have rented his units anyway even in the absence of the illegal conduct, he did not benefit from the bribes paid to Alicea. This argument is both simplistic and plainly speculative. It not only ignores the abundant evidence presented at trial which convincingly showed that the purpose of his bribing Alicea was precisely to generate business for himself, but is also devoid of any evidentiary foundation. The evidence presented at trial decidedly showed that 90% of Font's housing units were rented to participants of the §8 program, that it usually took applicants to that program in excess of a year to obtain a voucher to be able to rent a property under its provisions, and that through the illegal scheme implemented by Font and Alicea the former was able to pick and choose tenants which he then referred to the latter so that she could promptly issue them §8 vouchers to be redeemed at his vacant units. Given this evidence, there is simply no room to speculate, as Font would want us to, that even if he had not bribed Alicea so that she would speed the issuance of §8 vouchers for his hand-picked tenants he would have rented his units anyway to non §8 tenants. Rather, the only reasonable inference that can be made from the evidence is that, for whatever reasons, he preferred to rent his units through the §8

CRIMINAL 06-0178CCC                           7

program and through his illegal joint venture with Alicea he assured himself of renting them quickly to pre-selected tenants.

The testimony of four of the tenants who occupied Font's housing units after they obtained §8 vouchers through the illegal scheme implemented by bribing Alicea showed how he benefitted from it all. Sonia González testified how, after having difficulties trying to get a voucher from the §8 program, Font put her in touch with Alicea and only one month later she had her voucher issued. She used it to rent one of Font's apartments from February 2004 until October 2005, for which the §8 program paid $545.00 monthly. In that instance Font benefitted from the illegal scheme in the amount of $11,445.00. Eva Cintrón, in turn, testified that although she started to live in one of Font's apartments in September 2004 without having a §8 voucher, he assisted her in obtaining one. She eventually signed a §8 contract with Font renting a property for 12 months during which the §8 program paid $451.00 monthly. See also Government Exhibit 4. Hence, in that instance, Font benefitted from the illegal scheme in the amount of $5,412.00. Angie Cruz-Payero also testified in similar terms how Font suggested that she should apply to the §8 program and personally took her to Alicea's office in August 2004. This resulted in her obtaining the §8 voucher only one month later which she then used to rent one of Font's units for 12 months. The §8 program paid $531.00 monthly for that unit, see Government Exhibit 6, resulting in a benefit to Font in the amount of $6,372.00. Finally, Gloria Miranda-Ríos testified how while visiting Font's office with her mother one day he asked her if she was a participant of the §8 program. After she explained that she once was but had been cancelled, he instructed her to go to the §8 program and ask for Alicea on his behalf. Upon doing so, Alicea instructed her to fill a new application which resulted in her obtaining a voucher just a month later. She used it to rent one of Font's units for a year for which the §8 program paid $575.00 monthly, benefitting Font in the amount of $6,900.00.

CRIMINAL 06-0178CCC                              8

In light of the preponderance of the evidence presented at trial, it is evident that the illegal scheme perpetrated by Font and Alicea benefitted the former in the amount of $30,129.00. Thus, pursuant to U.S.S.G. §§2C1.1(b)(2) and 2B1.1(b)(1)(D) an upward adjustment of 6 levels, not 4 as recommended in the PSR, is warranted. Accordingly, defendant's objection to the adjustment made under said Guidelines is OVERRULED.

Conspiracy

Defendant next claims that as he was convicted of a conspiracy, but the underlying substantive offense was never committed, he should have been awarded a downward adjustment under §2X1.1(b)(2). Said Guideline section instructs that a 3-level downward adjustment be applied if the offense of conviction is a conspiracy "<u>unless the defendant or a co-conspirator completed all the acts the conspirators believed necessary on their part for the successful completion of the substantive offense</u> or the circumstances demonstrate that the conspirators were about to complete all such acts but for apprehension or interruption by some similar event beyond their control." (Emphasis ours.)

The substantive offense which defendants Font and Alicea were charged with conspiring to commit in Count Two of the Indictment was 18 U.S.C. §666(a)(1)(B), that while "being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof . . . [that] receive[d], in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance . . . corruptly solicit[ed] or demand[ed] for the benefit of any person, or accept[ed] or agree[d] to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency involving any thing of value of $5,000 or more." The preponderance of the evidence presented at trial, as summarized above, shows that Alicea completed all the acts necessary for the successful completion of

CRIMINAL 06-0178CCC                              9

the substantive offense.  Thus, given that Alicea was Font's co-conspirator, no downward adjustment is applicable under §2X1.1(b)(2). Defendant's request for said adjustment is also OVERRULED.

- Obstruction of Justice

The government avers that as defendant took the stand to intentionally provide false testimony on material matters in order to substantially affect the outcome of the case, a further two-level upward adjustment under U.S.S.G. §3C1.1 is warranted.  Defendant counters, however, that there was no perjury, claiming that the government has failed to show why what was said by its witnesses was actually true making false his testimony.

> Section 3C1.1 provides:
>
> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (I) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

To enhance a sentence for perjury pursuant to U.S.S.G. §3C1.1, a court must review the record and find by a preponderance of the evidence that each of the elements of perjury- willfulness, falsity, and materiality, is present. United States v. Shinderman, 515 F.3d 5, 19 (1st Cir. 2008).  An enhancement pursuant to §3C1.1 is not appropriate merely because a defendant testified at trial and was found guilty.  United States v. Gobbi, 471 F.3d 302 (1st Cir. 2006).  A court must make affirmative findings with respect to each element of perjury, and its conclusion is independent of the jury verdict.

In United States v. Dunnigan, 507 U.S. 87, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993), the Supreme Court held that enhancement of a guidelines sentence for obstruction of justice under U.S.S.G. §3C1.1, based upon a finding that the defendant perjured himself or herself did not violate the Constitution. The Court wrote:

CRIMINAL 06-0178CCC                               10

> [T]he enhancement provision is part of a sentencing scheme designed to determine the appropriate type and extent of punishment after the issue of guilt has been resolved. The commission of perjury is of obvious relevance in this regard, because it reflects on a defendant's criminal history, on [his or] her willingness to accept the commands of the law and the authority of the court, and on [his or] her character in general.

Id., at 94, 113 S.Ct. at 1116.

During Font's direct examination by his then counsel, he categorically testified that he never gave preferential treatment to Alicea. He also testified that his referral to Alicea of his potential §8 tenants were merely for guidance. These statements, however, were completely at odds with the declarations of all the government witness who narrated the same events, which we found to be entirely credible based on the observation of their demeanor during their trial testimonies.

Font's testimony at trial involved significantly more than a mere denial of guilt, as he willfully gave false testimony concerning material matters. Font's antithetical testimony cannot be justified as being a result of confusion, mistake or faulty memory, but may only be explained as a concerted effort designed to interfere with these judicial proceedings. His statements were utter falsehoods, willfully made to mislead and misdirect the jury and to obstruct justice. See Dunnigan, 507 U.S. at 95, 113 S.Ct. at 1116-17. Under the standard articulated in Dunnigan, the testimony of Font constituted obstruction of justice which warrants an upward adjustment of two levels pursuant to Section 3C1.1. Accordingly, the government's sole objection to the PSR is SUSTAINED.

Having disposed of all the objections to the PSR, we conclude that the total offense level applicable to defendant Font under the advisory Sentencing Guidelines is 22, which coupled with the determined Criminal History Category of I calls for a guideline sentencing

CRIMINAL 06-0178CCC 11

range of between 41 and 51 months.  At sentencing, the Court will consider said advisory range in conjunction with all the other sentencing factors set forth in 18 U.S.C. §3553(a).

SO ORDERED.

At San Juan, Puerto Rico, on November 4, 2009.


S/CARMEN CONSUELO CEREZO
United States District Judge